UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SYMPHONIE A.,

                Plaintiff,

v.                                          CASE NO. 1:25-cv-00110
                                          (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docs. 8, 11.) Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.     Procedural Background

On August 18, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits and an application for supplemental security income, alleging disability beginning March 14, 2020.  (Tr. 242-43; 244-60.)  Plaintiff's

claim was denied initially and upon reconsideration.  (Tr. 87, 88, 107, 107.)  She then timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 163-64.) Plaintiff appeared with counsel for a telephonic hearing before ALJ Stephan Bell held on April 15, 2024.  (Tr. 31-61.)  On April 26, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 12-30.)  The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

**B.    Factual Background[1]**

Plaintiff was born July 9, 1993, has a high school education, and has completed four or more years of college.  (Tr. 90, 294.)  Her alleged disabling conditions were multiple sclerosis, vision issues, neuropathy, bipolar disorder, and depression.  (Tr. 36, 90, 99.)

Plaintiff initially admitted she was "pretty independent" and "can do things on [her] own. (Tr. 36.)  However, she indicated that she becomes very overwhelmed with tasks and work, particularly with issues of focus and staying on task for prolonged periods of time. (*Id.*)  She also described that the numbness and tingling in her hands made gripping difficult, which also made finishing tasks difficult. (*Id.*) Plaintiff explained that this decreased sensation in her legs and hands, including numbness, comes and goes. (Tr. 47.)  She confirmed it was more numbness, not typically pain. (*Id.*)  She also noted that, despite a C5-6 protrusion and disc herniation, she did not experience pain associated with it. (Tr. 48.)  She did, however, describe some limitations in terms of reaching up, but not to the sides or forward. (*Id.*)  She also described difficulty opening or twisting items, such as jars. (Tr. 49.)

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

Plaintiff also indicated that she had some mood instability, although it was not "too cra[z]y" as long as she was not "super distressed out." (Tr. 36.)  She further indicated that stress exacerbates her multiple sclerosis symptoms, causing pain in her muscles and hips, which makes it difficult to walk and keep her balance. (Tr. 36-37.)

Plaintiff testified that she lived with a roommate and did some cleaning and cooked twice a week, making enough to last during the days she did not cook, while her roommate did the dishes. (Tr. 37-38.)  She explained that repetitive tasks could become overwhelming for her and so she would break them up. (Tr. 38.)  Plaintiff described that when she becomes overwhelmed, she struggles to finish tasks or finish them correctly or well.  (*Id.*)  She also indicated there were no tasks around the house that she could not complete because of her physical issues. (*Id.*)  She further explained that she was able to complete personal care tasks, but that, depending on her mobility, she may choose clothes without buttons or zippers. (Tr. 39.)  She described that she could bathe without assistance, that she only needed to be careful not to overheat.  (*Id.*)

Plaintiff noted that she was able to drive to most of her appointments, although she was having difficulty with her vision to a degree, and that sometimes limited her ability to drive. (Tr. 39-40.) She indicated that she did not have difficulty reading at a desk or table. (Tr. 52.)

Plaintiff also described her hesitation with certain treatments and medications previously recommended, as well as her treatment history. (Tr. 41.)  She expressed concern with side effects of medication and confirmed previous negative side effects. (Tr. 42-43.)  She was able to describe in detail the medications she had taken, how they were administered, and how long she took them. (Tr. 54.)

Plaintiff disclosed she had blood clots which caused her significant difficulty in being able to walk and also precluded her from being able to stay active with yoga. (Tr. 43-44.) She explained she had to stop teaching yoga. (Tr. 44.) She also described pain in her right leg, causing limitations in prolonged jogging or other cardio-based activities. (Tr. 49.)

Plaintiff testified that she was not in treatment for her bipolar disorder because her therapist does not take her insurance. (Tr. 43.) Plaintiff described that she has to write down notes about everything to help her recall events. (Tr. 51.) She indicated she could concentrate to read a short article but could not read a book. (*Id*.)

## C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2025. (Tr. 18.)

2.  The claimant has not engaged in substantial gainful activity since March 14, 2020, the established onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Tr. 18.)

3.  The claimant has the following severe impairments: multiple sclerosis and Antithrombin 3 Deficiency Disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. 18.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 19.)

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights, never in or around moving mechanical parts, never operate a motor vehicle, and

never work in or around vibration. The claimant can perform simple, routine tasks and make simple work-related decisions.  (Tr. 20.)

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965). (Tr. 23.)

7.  The claimant was born on July 9, 1993 and was 29 years old, which is defined as a younger individual age 18-49, on the established disability onset date (20 CFR 404.1563 and 416.963). (Tr. 24.)

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 24.)

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). (Tr. 24.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).  (Tr. 24.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 14, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).  (Tr. 25.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B.      Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is

unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff argues, in essence, that the ALJ's RFC is not supported by substantial evidence because the record does not contain any functional assessments regarding Plaintiff's physical or mental health.  Although there are agency reviewer opinions in the record, each concluded that there was insufficient evidence to make a disability determination prior to the date last insured.  (*See* Tr. 94-95, 103-04, 111-12, 117-18.) (concluding the evidence was insufficient to find disability because Plaintiff "failed to supply initial paperwork including ADL and functioning questionnaires.") And the ALJ did not obtain any consultative examinations or opinions.  Thus, Plaintiff contends that the ALJ: (1) failed to discharge his duty to develop the record, as he did not obtain a medical opinion; (2) formulated his RFC without any medical opinion evidence, improperly relying on his own lay interpretation of the evidence; and (3) ultimately failed to properly explain how he formulated the RFC.  (*See* Doc. 8-1 at 14-15.)

As a threshold matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner—not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any single medical opinion in the

record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Demeca P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024) (recognizing that "an ALJ may formulate an RFC absent any medical opinions" and "is free to reject portions of medical-opinion evidence not supported by objective evidence.")

"The Second Circuit has consistently held where 'the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.'" *Tracy N. v. Comm'r of Soc. Sec.*, No. 1:20-cv-0841(WBC), 2021 WL 2649577, at *3 (W.D.N.Y. June 28, 2021) (quoting *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)). That said, courts in this district have generally acknowledged that, to establish an RFC without medical opinion evidence, the record "must show limitations that have measured, qualified, or described themselves in a way that permits reasonable inferences of the claimant's RFC." *Lee C. v. Comm'r of Soc. Sec.*, 23-cv-0171-LJV, 2024 WL 217582, *3 (W.D.N.Y. Jan. 19, 2024); *see also Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293-94 (W.D.N.Y. 2018) (recognizing that the record must provide some interpretation that correlates medical data into functional limitations). Courts also recognize that certain impairments may be "relatively simple and mild, such that an ALJ may render a 'common sense judgment' without a physician's assessment." *Kenneth P. v. Comm'r of Soc. Sec*, 1:19-cv-01478, 2021 WL 1135469, at *4 (W.D.N.Y. Mar. 25, 2021) (internal quotation marks and citation omitted); *see also Janine T. v. Comm'r of Soc. Sec*,

No. 23-cv-384-FPG, 2024 WL 1678128, *3 (W.D.N.Y. April 18, 2024) (recognizing that "[w]hile an ALJ may render common sense judgments about functional capacity, [she] must avoid the temptation to play doctor.") (internal quotation omitted).

In his decision, the ALJ carefully detailed Plaintiff's medical history pertaining to her physical issues, including treatment, subjective complaints, objective examinations, and diagnostic evidence. (*See* Tr. 20-23.) He immediately recognized that the diagnostic imaging showed "multiple, progressive lesions" on Plaintiff's brain and throughout her spinal cord, as well as changes in her bilateral lungs. (*See* Tr. 20; *see also, e.g.,* Tr. 397-402, 404-13.) He also acknowledged her complaints of "difficulty sleeping, insomnia, feelings of anxiety, fatigue, mental cloudiness, diminished focus, recurrent infections, and gastrointestinal symptoms," characterizing these complaints as "consistent." (Tr. 20; *see also, e.g.,* Tr. 365-66, 374, 380-83.) The ALJ noted that Plaintiff underwent a thrombectomy in June 2023 as a result of deep vein thrombosis in her right leg. (Tr. 20; *see also, e.g.,* Tr. 1253-56, 1265-67, 1281-83.) He also recognized that, although Plaintiff generally reflected normal gait and stance, "she reported feeling unsteady at times and experienced difficulty walking longer distances." (Tr. 20; *see also, e.g.,* Tr. 1141.)

The ALJ also considered Plaintiff's subjective complaints, but after engaging in the appropriate analysis, he concluded they were not entirely credible, concluding that the record did not support Plaintiff's allegations of symptom severity. (Tr. 21-22.) Plaintiff does not challenge this analysis or conclusion. Importantly, ALJ Bell noted that, while diagnostic imaging reflected a decline in Plaintiff's condition, there was not a corresponding symptom decline, as her complaints of diplopia and muscle weakness were only intermittent, she remained asymptomatic without medications, and she

9

continued to present as "stable" to her providers.  (Tr. 22; *see also, e.g.,* Tr. 376, 382, 442.)  Finally, her objective physical and mental examinations were repeatedly normal. (Tr. 22; *see also, e.g.,* Tr. 395, 471-72, 503-04, 530-31, 679, 1104, 1141-42, 1193-94.)

The ALJ also thoroughly considered Plaintiff's mental health treatment history, noting that she inconsistently pursued counseling and did not take any psychotropic medication for her conditions. (Tr. 22; *see also, e.g.,* Tr. 471, 475.)  While he recognized Plaintiff complained of memory loss, he noted that treatment providers did not identify any evidence of true memory loss.  (Tr. 22; *see also, e.g.,* Tr. 478, 530, 678.)  He also recognized that Plaintiff's performance status was described as "[f]ully active, able to carry on all pre-disease performance without restriction."  (*See* Tr. 22; *see also, e.g.,* Tr. 679.) He recognized that she was a highly functioning individual. (Tr. 22; *see also, e.g.,* Tr. 683.)

The ALJ acknowledged Plaintiff's denial of medication management for her conditions, including not taking medication for her multiple sclerosis condition and stopping anticoagulant medication.  (Tr. 22; *see also, e.g.,* Tr. 390, 446, 473, 679, 687.) He noted that while Plaintiff experienced intermittent blurred vision, she attributed that to not wearing glasses. (Tr. 22; *see also, e.g.,* Tr. 471, 1168.) He also recognized Plaintiff's complaints of alleged numbness and tingling, along with diminished grip, but he identified that the records reflected normal sensation, coordination, and grip strength. (Tr. 22; *see also, e.g.,* Tr. 509, 1130, 1168, 118-89.)  He further acknowledged Plaintiff's concerns regarding medication side effects but noted that the record did not support a finding of disability because the record "fairly consistently showed limited symptom complaints and providers' generally noting symptom stability."  (Tr. 22.)  The ALJ further emphasized the

10

existence of significant periods during which Plaintiff took no medication and refused to comply with recommended treatments, which again did not support a finding of disability—or an RFC more limited than that formulated by the ALJ.  (Tr. 22.)

At the conclusion of his analysis, the ALJ explained his RFC, noting:

> I find the claimant capable of light exertion based upon limited showing of physical restrictions during periods of relapse and chronic pain due to myelopathy (e.g., Exhibit B17F, pp. 19-20). I find she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl, never work at unprotected heights, never in or around moving mechanical parts, never operate a motor vehicle, and never work in or around vibration because of her blood clotting disorder, fatigue, and vision difficulty (e.g., B17F, pp. 6, 20; ). I find that she can perform simple, routine tasks and make simple work-related decisions because of her reported brain fog and fatigue (e.g., Exhibit B2F, pp. 5, 9; B9F, pp. 4-5; B17F, pp. 20, 33, 63-64).

(Tr. 23.)

Having carefully reviewed the record and the ALJ's decision, the Court finds no error.  Rather, it is clear that the ALJ formulated Plaintiff's RFC based on the record as a whole and that it is supported by substantial evidence.   Indeed, the ALJ's RFC is consistent with the medical records and testimony in evidence. Plaintiff's testimony suggests some limitations in walking, standing, and sitting, but these limitations are not inconsistent with light exertional work, especially when regular breaks and a lunch period are considered.  *See* 20 C.F.R. § 404.1567(b).[2]   Further, Plaintiff's generally normal gait and other objective medical findings similarly support a light RFC.  *See Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (affirming the ALJ's RFC of light work with additional restrictions when the record reflected a normal gait and station, normal strength in the

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *See* 20 C.F.R. § 404.1567(b).

extremities, among other findings); *Burnette v. Colvin*, 564 F. App'x 605, 608 (2d Cir. 2014) (finding the RFC for light work to be supported by substantial evidence when the record reflected "normal range of motion, gait, and strength" and occasional "mild or moderate physical pain, which her medication generally relieved," among other facts).

Similarly, her daily activities support the RFC of light work. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021). *See also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (approving of the ALJ's reliance on daily activities, including "was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer" in affirming the ALJ's RFC of light work).

Plaintiff does not argue for a more restrictive RFC or identify any limitations supported by the record that were rejected by the ALJ. This is significant, as Plaintiff maintains the burden of proving a more restrictive RFC than that assigned by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff does not attempt to carry this burden. And, while the Court recognizes the significance of Plaintiff's diagnosis, it is important to note that the record does not support disabling limitations in Plaintiff's functional ability. Even Plaintiff acknowledged that she was "pretty independent" and "can do things on [her] own." (Tr. 36.) She also indicated there were no tasks at home that she could not complete because of her physical issues. (Tr. 38.) Based on the record evidence, the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

The Court also does not find that the ALJ failed to develop the record. While the Court acknowledges that "the social security ALJ, unlike a judge in a trial, must on behalf

12

of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," *Moran*, 569 F.3d at 112 (internal quotation marks omitted), this requires the ALJ to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)). Plaintiff does not argue that medical records were missing, or that there was a substantive gap in the record.  To the contrary, she argues that a medical opinion was not included. However, a consultative examination is not a requirement.  *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (noting that "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it.").  Plaintiff does not identify "an inconsistency in the evidence" or argue specifically why the evidence is "insufficient to allow [the ALJ] to make a decision," despite acknowledging this would necessitate a consultative examination.  (*See* Doc. 8-1 at 18) (citing *Tankisi*, 521 F. App'x at 32).  As detailed above, the Court finds sufficient evidence to support the ALJ's decision, finding no gap or other deficiency in the record to mandate a consultative examination.  *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")

Moreover , the Court does not find that the ALJ created the RFC out of whole cloth. The law is quite settled that a medical opinion is not required to formulate an RFC, as it is an administrative finding, not a medical finding. *See Schillo*, 31 F.4th at 78.  And here, the record contained sufficient information for the ALJ to formulate an RFC supported by substantial evidence, as set forth above.  *See Tracy N.*, 2021 WL 2649577, at *4 (affirming the ALJ's RFC, even though there was no medical opinion evidence in the record,

13

concluding that the ALJ formulated the plaintiff's RFC "based on the record as a whole," "even though the record failed to contain specific functional limitations," when the ALJ relied on objective medical observations).

To the extent Plaintiff argues that a function-by-function analysis was required, and remand is necessary without it, the Court disagrees.  The Second Circuit has noted that "[w]here an ALJ's analysis ... regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, ... remand is not necessary merely because an explicit function-by-function analysis was not performed." *Domm v. Colvin*, 579 F. App'x 27, 28–29 (2d Cir. 2014) (quoting *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013)) (internal quotation marks omitted).  Moreover, the ALJ expressly tethered each limitation to specific evidence in the record, noting the reason for each limitation, (*see* Tr. 23), and the Court finds this explanation adequate.

Thus, the Court has carefully considered the record and the ALJ's analysis in formulating the RFC, and it finds no error.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED**.

14

The Clerk of Court is **DIRECTED** to close this case.


Dated: May 20, 2026                          J. Gregory Wehrman
Rochester, New York                          HON. J. Gregory Wehrman
                                             United States Magistrate Judge